UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| EULLIS MONROE GOODWIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:13-CR-37-JRG-11 |
| | ) | 2:15-CV-233-JRG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Petitioner's supplemented pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. 621 (original petition); Doc. 680 (supplement)]. The United States responded in opposition on November 16, 2015 [Doc. 640]; Petitioner filed a pro se reply to that response on December 4, 2015 [Doc. 642]. Also before the Court are Petitioner's pro se motions for the appointment of counsel [Doc. 625], and to hold the case in abeyance pending the Supreme Court's decision in *Welch v. United States*, 136 S. Ct. 1257 (2016) [Doc. 643]. For the reasons discussed below, Petitioner's pro se requests for the appointment of counsel and to hold the case in abeyance pending *Welch* [Docs. 625, 643] will be **DENIED as moot** and Petitioner's supplemented § 2255 motion [Docs. 621, 680] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

I. BACKGROUND

Petitioner distributed significant quantities of crack cocaine that he obtained from co-defendant Demetrius Dalton [Presentence Investigation Report (PSR) ¶ 12]. Law enforcement authorities discovered Petitioner's involvement in the drug-distribution conspiracy through the use of confidential informants, controlled drug transactions, and intercepted telephone calls [*Id.*

¶¶ 10-22]. A federal grand jury charged Petitioner with conspiring to distribute and possess with intent to distribute at least 280 grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) [Doc. 55 (superseding indictment)].

Petitioner moved to suppress the evidence resulting from the Title III interception of Dalton's telephone on the ground that the affidavit upon which the Court authorized the wiretap failed to establish the "necessity" of the interception [Doc. 329 (motion to suppress)]. Specifically, Petitioner asserted that the United States already had "evidence aplenty to prosecute the named interceptees," but the magistrate judge was unpersuaded, noting that "the government justifiably was attempting to ascertain others involved in the conspiracy who were at that time unknown" [Doc. 350 at 3 (report and recommendation)]. The magistrate judge also determined that law enforcement agents had already attempted and given "serious consideration to" other investigative techniques before requesting authorization for a wiretap [*Id.* at 3-4]. On May 13, 2014, the magistrate judge recommended that Petitioner's suppression motion be denied [*Id.*].

The very next day, i.e., before expiration of time to file objections to the magistrate judge's recommendation, the parties negotiated—and Petitioner signed—a plea agreement under which Petitioner would plead guilty to a lesser-included offense in exchange for a guaranteed sentence of 188 months' imprisonment [Doc. 355 (plea agreement)]. Under the plea agreement, Petitioner stipulated that he was personally responsible for at least 84 grams of crack cocaine; he also agreed "not to file a direct appeal of [his] conviction(s) or sentence" and "waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255," except for "claims of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] by the time of the entry of judgment" [*Id.* ¶¶ 4(m), 10)]. Eight days later, on May 22, 2014, Petitioner pleaded guilty to conspiring to distribute and possess with intent to distribute at least 28 grams of crack

cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B); this Court accepted his guilty plea, but took the plea agreement and its stipulated sentence under advisement pending the PSR [Doc. 369].

Using the drug quantity stipulated in the plea agreement, the United States Probation Office noted that Petitioner's base offense level was twenty-six [PSR ¶¶ 23, 28]. Based on four prior convictions—a 1993 Illinois conviction for armed robbery and attempted murder [*Id.* ¶ 43], a 2001 Tennessee conviction for robbery [*Id.* ¶ 44], a 2002 Tennessee conviction for aggravated assault [*Id.* ¶ 45], and a 2003 Tennessee conviction for aggravated assault [*Id.* ¶ 47], that same office deemed Petitioner to be a career offender under Section 4B1.1 of the United States Sentencing Guidelines, with an enhanced base offense level of thirty-four [*Id.* ¶ 34]. A three-level reduction for acceptance of responsibility yielded a total offense level of thirty-one, criminal history category of VI, and advisory Guidelines range of 188 to 235 months [*Id.* ¶¶ 35–37, 51–52, 95–96].

Shortly after the parties received Petitioner's PSR, and approximately three months after Petitioner pled guilty, Petitioner moved to withdraw his guilty plea because, in his view, he was not a career offender and the agreed-upon sentence of 188 months' imprisonment was "too high" when compared to various co-defendants' sentences [Doc. 438]. During a hearing on that motion in September of 2014, Petitioner moved to withdraw his motion to withdraw his guilty plea, and the Court granted that request [Doc. 473; Doc. 614 at 11]. During the subsequent sentencing hearing, Petitioner said, "I would just like to apologize for . . . my actions in the conspiracy and the role that I played, even though I, I really didn't play a role in the conspiracy, but I did, unfortunately, . . . I mean, I did without knowingly, I mean not knowingly at the time " [Doc. 614 pp. 8-9]. This Court inquired whether Petitioner was denying his guilt, and Petitioner

insisted that he was, in fact, guilty, but then described himself as merely an addict, for whom the agreed-upon sentence of 188 months was "a lot more time than what [he] should be getting" [*Id.* at 9-10]. Again, this Court sought to clarify by asking whether Petitioner was asking it "to accept [the] plea agreement and impose the 188-month sentence or . . . indicating that [he was] not guilty of [the charged] offense and . . . want[ed] to withdraw [his] guilty plea" [*Id.* at 11]. Petitioner replied, "No, I'm guilty. . . . I was asking Your Honor if you could show leniency on the time" [*Id.*]. This Court explained that it could accept the negotiated plea agreement and impose a 188-month sentence, could reject the plea agreement and allow Petitioner to withdraw his guilty plea, or could reject the plea agreement and, if Petitioner declined to withdraw his guilty plea, would sentence Petitioner without a plea agreement [*Id.*]. This Court warned Petitioner that, under the third option, the Court could impose a sentence far longer than 188 months' imprisonment and, at one point, explicitly said that, but for the Rule 11(c)(1)(C) plea agreement, it "would not be inclined to impose a bottom-of the-guideline-range sentence" for Petitioner because of his "very serious and violent" criminal history [*Id.* at 11-17]. After considering his options, Petitioner elected to "accept the plea" agreement as previously negotiated by his counsel [*Id.* at 12, 17]. Accordingly, this Court adopted the plea agreement and imposed the agreed-upon sentence [*Id.* at 19- 21; Doc. 499]. It entered the judgment in Petitioner's case on October 1, 2014 [Doc. 499].

Because Petitioner "disagreed with various things that have been done, partly . . . at the advice of [his] lawyer," this Court asked whether he was "still satisfied" with counsel's representation [Doc. 614 at 17 (noting that, during the plea colloquy, Petitioner had said he was then satisfied with counsel)]. Petitioner responded in the affirmative: "Yes. He done what, he done what he had to do, what he can do" [*Id.* at 17-18].

4

Petitioner did not file a direct appeal, but instead submitted the instant timely petition to vacate, set aside, or correct his sentence on August 26, 2015 [Doc. 621]. In addition to several other pro se motions, Petitioner filed a supplement to the petition on March 31, 2017 [Doc. 680].

## II.     REQUEST FOR THE APPOINTMENT OF COUNSEL

In addition to the supplemented petition, this Court is in possession of a pro se motion requesting the appointment of counsel to assist Petitioner with litigation of his collateral challenge, especially his ground for relief based on *Johnson* [Doc. 625]. To the extent that he seeks counsel to assist in litigation of his *Johnson*-based challenge, that request will be **DENIED as moot** in light of the fact that this Court already appointed Federal Defender Services of Eastern Tennessee (FDSET) by Standing Order to identify and represent all defendants in the Eastern District of Tennessee with a viable argument for collateral relief based on *Johnson*. E.D. Tenn. S.O. 16-02 (Feb. 11, 2016). To the extent that he requests counsel to aid in litigation of his other grounds for collateral relief, that request will be **DENIED** because Petitioner has not demonstrated that counsel is necessary to ensure that those claims are fairly raised or heard. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986); *see also Childs v. Pellegrin*, 822 F.2d 1382, 1284 (6th Cir. 1987) (explaining that the appointment of counsel in a civil case is a matter within the discretion of the district court).

## III.    REQUEST TO HOLD THE CASE IN ABEYANCE

This Court is also in possession of Petitioner's pro se request to hold his petition in abeyance until the Supreme Court determines whether or not *Johnson* applies retroactively on collateral review in *Welch v. United States*, 136 S. Ct. 1257 (2016) [Doc. 643]. Because the Supreme Court decided *Welch* on April 16, 2016, and because that decision limited its analysis

to retroactivity in the ACCA context, the pro se request to defer ruling will be **DENIED as moot**.

IV.     **SUPPLEMENTED PETITION FOR COLLATERAL RELIEF**

   A.     **Standard of Review**

To obtain relief under 28 U.S.C. § 2255, Petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

   B.     **Analysis**

As supplemented, the petition contains four discernable grounds for collateral relief. In the first ground, Petitioner challenges his career offender designation based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague (Ground One) [Doc. 621 at 4 (suggesting that the identically worded Guidelines residual clause is equally vague); Doc. 680].[1] In the last three grounds, Petitioner argues that he received ineffective assistance of counsel. Specifically, Petitioner argues that counsel rendered constitutionally deficient assistance by: allowing Petitioner to plead guilty without insisting on

---

[1]     Petitioner's supplement requests that this Court apply the "modified categorical approach" when evaluating whether he is entitled to collateral relief based on *Johnson* [Doc. 680].

6

various changes to the plea agreement (Ground Two); for not filing objections to the magistrate judge's recommendation that his suppression motion be denied (Ground Three); and not investigating or objecting to Petitioner's classification as a career offender (Ground Four) [*Id.* at 5–8, 14–18].

### 1. Ground One: Career Offender Designation After *Johnson*

Petitioner argues that *Johnson* invalidated the Guideline residual clause and that his 2003 robbery, 2001 aggravated assault, and 2003 aggravated assault convictions cannot be categorized as crimes of violence without that provision. That argument fails for two reasons.

First, the Guidelines are "not amenable to vagueness challenges." *Beckles v. United States*, 137 S. Ct. 886, 894 (2017). Because *Johnson* had no effect on Petitioner's status as a career offender, that decision cannot justify relief.[2] Second, he waived the claim [Doc. 355 ¶ 10(b)].

An informed and voluntary waiver of the right to collaterally attack a sentence is enforceable. *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999); *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). The Sixth Circuit recently held that the same is true even where that waiver prevents a petitioner from challenging his base offense level or career offender enhancement based on *Johnson*. *See In re Garner*, No. 16-1655, 2016 WL 6471761, at *1–2 (6th Cir. Nov. 2, 2016) (denying leave to challenge career offender

---

[2] Regardless, Petitioner's Illinois and Tennessee robberies are crimes of violence under the Guidelines use-of-physical-force clause. *Accord United States v. Mitchell*, 743 F.3d 1054, 1058–60 (6th Cir. 2014) (holding that Tennessee robbery is a violent felony under the ACCA's use-of-physical-force clause); *United States v. Taylor*, 800 F.3d 701, 719 (6th Cir. 2015) ("*Johnson* leaves unaffected this Court's determination that simple robbery in Tennessee is a predicate offense under 'the use-of-physical-force' clause"); *United States v. Kemmerling*, 612 F. App'x 373, 375–76 (6th Cir. 2015) (reiterating that *Johnson* did not affect the use-of-physical-force clause).

enhancement based on *Johnson* where the defendant voluntarily waived his right to raise collateral challenges).

"The Federal Rules of Criminal Procedure give the parties ample room to tailor plea agreements to different needs—whether they are the right to appeal, the right to benefit from future changes in the law or other concerns that the defendant . . . may have." *United States v. Bradley*, 400 F.3d 459, 466 (6th Cir. 2005). For purposes of the instant case, Petitioner "knowingly and voluntarily" waived his right to collaterally challenge his sentence with the exception of cases involving ineffective assistance or prosecutorial misconduct [Doc. 355 ¶ 10(b)]. The fact that "developments in the law [have] expand[ed] [Petitioner's forfeited] right [of collateral review] . . . does not suddenly make [his] plea involuntary or unknowing or otherwise undo its binding nature." *United States v. McGlivery*, 403 F.3d 361, 363 (6th Cir. 2005). In light of the binding nature of Petitioner's wavier, the challenge to his career offender designation will be dismissed. *Accord United States v. Avery*, No. 3:16-cv-2, 2016 WL 7467967, at *4–6 (S.D. Ohio Dec. 28, 2016) (denying *Johnson*-based challenge based on pre-*Johnson* waiver); *United States v. Strauss*, No. 16-cv-11397, 2016 WL 68733398, at *2–3 (E.D. Mich. Nov. 2, 2016) (same); *United States v. Muller*, No. 16-cv-20009, 2016 WL 6892268, at *2–3 (E.D. Mich. Nov. 2, 2016) (same).[3]

---

[3] While this Court recognizes that courts within this district have repeatedly stated that it is "far from clear" that waiver of the right to collaterally challenge a sentence can be enforced to bar challenges based on the *Johnson* decision, *Mefford v. United States*, No. 3:15-cv-575, 2016 WL 1737094, at *1, n. 1 (E.D. Tenn. May 2, 2016); *Cox v. United States*, No. 3:15-cv-362, 2016 WL 552350, at *1, n. 1 (E.D. Tenn. Feb. 10, 2016); *Nance v. United States*, 3:15-cv-387, 2016 WL 527193, at *1, n. 1 (E.D. Tenn. Feb. 9, 2016), each of those cases alleged improper categorization under the ACCA. Unlike mistaken enhancement under the ACCA, improper career offender or base offense level enhancement does not result in a sentence "in excess of the maximum authorized by law." *See, e.g.*, *United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *14 (W.D. Ky. Nov. 7, 2008) (explaining that knowing and voluntary waivers are

## 2. Grounds Two, Three, and Four: Ineffective Assistance of Counsel

A petitioner alleging ineffective assistance must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel's assistance is presumed to have been effective, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy" (internal citation omitted)).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the court need not decide whether counsel's performance was deficient.

### i. Ground Two: Plea Agreement

Petitioner complains that counsel "coerced him into signing the plea agreement" by promising that the duration of Petitioner's participation in the conspiracy—listed as March 1, 2012 to April 9, 2013—would be shortened significantly [Doc. 622 p. 7]. He also implies that

---

enforceable so longs as they do not result in a miscarriage of justice and that a miscarriage of justice arises where the sentence imposed exceeds the statutory maximum permissible).

the reason he wishes to modify the plea agreement is to render some prior convictions "too old" for consideration in the Guidelines calculations. Sworn statements contradict Petitioner's allegation.

At the sentencing hearing, this Court observed that Petitioner was attempting to mitigate his involvement in the offense, repudiate some of what he had previously sworn to be true, and argue that he was not as culpable as the United States claimed. In response, it provided Petitioner the opportunity to either withdraw his guilty plea or accept the agreement as drafted [Doc. 614 at 17 ("If you don't like your agreement, if you don't like the deal you've made, if you want to withdraw your guilty plea, or if you want to take your chances . . . at sentencing, I think [the Court] is prepared to let you do that.")]. Despite being told that accepting the agreement meant that this Court had no choice but to impose the agreed-upon 188 month term of incarceration, Petitioner decided to accept the terms of the plea as they existed at the sentencing hearing [*Id.*]. Petitioner received several opportunities to express concern with, or object to, the terms of his plea, but continuously maintained that he intended to accept that agreement and was in fact guilty [*Id.* at 9 ("Yes, I'm guilty."), 11 ("No, I'm guilty. I mean, I'm guilty, but I was asking your honor if you could show leniency on the time."), 12 ("I'm going to accept the plea.")]. This Court concluded by asking Petitioner the following question:

> One other thing, Mr. Goodwin, you have throughout the course of these proceedings disagreed with various things that have been done, partly, I guess, at the advice of your lawyer, and you told me at the time of the . . . change of plea though you were satisfied with Mr. McKenzie's representation of you. Are you still satisfied with his representation of you?

[*Id.* at 17]. Petitioner responded in the affirmative [*Id.* at 17–18 ("Yes. He done what, he done what he had to do, what he can do.")]. Finding that response credible, the guilty plea voluntary,

and the agreed term of incarceration appropriate, this Court accepted the Rule 11(c)(1)(C) agreement and imposed the agreed upon 188-month term of incarceration [*Id.* at 19].

"Solemn declarations in open court carry a strong presumption of verity" and justify summary dismissal of any challenge based on conclusory assertions or contentions incredible on the face of the record. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner has not identified and this Court is unaware of any reason to doubt the veracity of his prior sworn statements and the record contradicts his suggestion that counsel made a specific promise to change to the plea agreement. Petitioner was given the opportunity to make handwritten alterations to the plea, each of which he initialed [Doc. 355 at 3 (changing duration of stipulated participation in conspiracy from nine to two months), 5 (eliminating quotation from recorded phone call), 8 (changing stipulated quantity of cocaine base from 196 grams to 84 grams)]. The duration and start date of his participation in the conspiracy were not among the changes requested and, even if he had made those requests, there is no guarantee that they would have been accepted. *Accord Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[There is] no constitutional right to plea bargain.").

To demonstrate prejudice based on ineffectiveness in plea negotiations "a [petitioner] must show that but for the ineffective [conduct] of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 132 S. C. 1376, 1385 (2012). Here, Petitioner has made no such showing. *See, e.g.*, *Pough v. United States*, 442 F.3d 959, 964 (6th

Cir. 2006) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence." (internal quotations and citation omitted)).

### ii. Ground Three: Report and Recommendation

Petitioner argues that counsel should have objected to the magistrate judge's ruling on the suppression motion because "it is [his] belief that he had a great chance of being acquitted of the charges that had been placed against him had . . . counsel objected" [Doc. 622 at 10], but does not identify any basis for that proposed objection. Without additional information and development, Ground Three is unreviewable and must be dismissed. *See United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (deeming undeveloped claims unreviewable); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of veracity, are not sufficient to warrant a hearing."); s*ee also Hall v. United States*, No. 3:05-cr-36-TAV, 2015 WL 3994834, at *4 (E.D. Tenn. July 1, 2015) ("Petitioner has the burden to establish that he is entitled to relief. . . . The Court cannot evaluate a claim that consists of little more than a single conclusory sentence. The claim must be rejected because it has not been adequately developed, and therefore, is not reviewable."). Petitioner's ambiguous allegation that counsel "failed to raise a defense" fails for the same reason.

### iii. Ground Four: Prior Crimes of Violence

In his final ground for relief, Petitioner argues that the United States failed to prove the existence of his prior convictions beyond a reasonable doubt and that counsel should have objected to his career offender classification on that basis [Doc. 622 p. 9]. The claim fails for two reasons.

First, the United States needed to prove the existence of Petitioner's career offender predicates by a preponderance of the evidence, not beyond a reasonable doubt. *United States v. Martin*, 526 F.3d 926, 941 (6th Cir. 2008). Thus, the absence of evidence proving the existence of those offenses beyond a reasonable doubt does not require vacatur or correction of his sentence.

Second, Petitioner argues that counsel should have objected to this Court's alleged use of non-*Shepard* documents when evaluating his 2003 aggravated assault conviction [Doc. 622 p. 9 ("[I]t is [Petitioner's] perception that the United States used no court documents to enhance [his sentence,] but [instead] relied on police reports.")], but has not shown how he was prejudiced by the absence of that objection.[4] Even without the 2003 aggravated assault conviction, Petitioner qualified as a career offender because his 1993 Illinois armed robbery and attempted murder conviction, 2001 Tennessee robbery conviction, and 2002 Tennessee aggravated assault conviction qualified as crimes of violence under a combination of the Guidelines use-of-physical-force, enumerated-offense, and residual clauses.[5] Because Petitioner has not

---

[4] To determine whether a particular offense qualifies as a crime of violence under Section 4B1.1, courts must first identify the precise crime of conviction. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). They do so by employing a "categorical approach," under which they look "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283. When the conviction involves violation of a "divisible" statute—one which comprises multiple, alternative versions of the crime—courts resort to the "modified categorical approach" under which they "consult a limited class of [*Shepard*] documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281.

[5] The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is

13

established prejudice, Ground Four fails. *See, e.g.*, *Hoffner v. Bradshaw*, 622 F.3d 487, 499 (6th Cir. 2010) (explaining that counsel cannot be held constitutionally ineffective for failing to raise a meritless objection).

IV. **CONCLUSION**

For the reasons discussed, Petitioner's pro se requests for the appointment of counsel and to hold the case in abeyance pending *Welch* [Docs. 625, 643] will be **DENIED as moot** and Petitioner's supplemented § 2255 motion [Docs. 621, 680] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

---

burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). It was this third clause—the residual clause—that the Supreme Court deemed unconstitutional in *Johnson*. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did "not call into question . . . the remainder of the [ACCA's] definition of violent felony," i.e., the use-of-physical-force and enumerated-offense clauses. *Id.*

Section 4B1.1 classifies a defendant as a career offender if (1) he or she was at least eighteen years old at the time the defendant committed the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he or she has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1(a). Only Petitioner's satisfaction of the third prong—possession of two qualifying predicate convictions—is disputed [Doc. 120]. Unlike the ACCA, the Guidelines are not subject to void for vagueness analysis and, as a result, the residual clause in Section 4B1.2 remained in effect after *Johnson*. *Beckles*, 137 S.Ct at 894.

　　　　　　　　　　　　　　　　　　　　s/J. RONNIE GREER
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE